## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| AFFILIATED HEALTH CARE ASSOCIATES, P.C., on behalf of plaintiff and a class, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | 13 C 5782 |
| | ) | |
| v. | ) | Judge Kocoras |
| | ) | Magistrate Judge Finnegan |
| HANDIT2 NETWORK, LLC, STANDARD HOMEOPATHIC CO., HYLAND'S, INC., and JOHN DOES 1-10, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

Plaintiff Affiliated Health Care Associates, P.C. respectfully requests that this Court grant the Motion for Preliminary Approval of Settlement : (i) preliminarily certifying a class for settlement purposes; (ii) granting preliminary approval of the Settlement Agreement attached hereto as Appendix A; and (iii) appointing Affiliated Health Care Associates, P.C. as Class Representative and Edelman, Combs, Latturner & Goodwin, LLC as class counsel. In support of this motion, Plaintiff states as follows:

1.     Plaintiff filed the above-captioned lawsuit against defendants, Handit2 Network, LLC ("Handit2"), Standard Homeopathic Company ("SHC"), and Hyland's, Inc. ("Hyland's") (collectively, "Defendants"), alleging that they violated the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 and the common law of conversion, by sending unsolicited facsimile advertisements to Plaintiff and other members of the class that did not contain an opt out notice in the form required by 47 U.S.C. § 227.

1

2.      Counsel for Plaintiff and Defendants have reviewed and analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals.

3.      Based upon this review and analysis, Plaintiff and the Defendants entered into the Settlement Agreement, attached hereto as <u>Appendix A</u>.[1]

4.      The parties desire to settle and compromise the litigation on the terms and conditions embodied in the Settlement Agreement, including, without limitation, the following:

a.      <u>Class Certification</u>.  The parties agree to the certification of a class, for settlement purposes only, consisting of:

> All persons and entities with fax numbers that during the period from August 14, 2008 through and including May 1, 2014, were sent facsimiles by SHC and/or Hyland's and/or Handit2 promoting products offered by SHC and/or Hyland's or promoting participation in sampling programs for products offered by SHC and/or Hyland's.

Handit2 represents that based on a review of its records, during the Class Period (from August 14, 2008 through and including May 1, 2014), it successfully sent approximately 190,000 facsimiles promoting products offered by SHC and/or Hyland/s or promoting participation in sampling programs for products offered by SHC and/or Hyland's to approximately 63,400 unique facsimile numbers.  The list of facsimile numbers to which those transmissions were sent and the number of transmissions sent to each fax number comprise the "Fax List."  Settlement Class Members were each sent between 1 and 15 facsimile advertisements.

---

[1]  All capitalized terms not otherwise defined herein are defined in accordance with the definitions set forth in the Settlement Agreement.

5.    <u>Defendants' Financial Condition</u>.    Handit2 is a single member limited liability company engaged in venue-based product sampling.  Due to the pure service nature of its business, Handit2 has virtually no physical assets.  Handit2 is managed by its sole member who operates the company out of his home.  Handit2's few employees are largely part-time and also work out of their respective homes.  Handit2's financial position is further compromised by a large unpaid receivable that was written off as a result of the company's role in this lawsuit.  It is certain that continued protracted litigation and/or a class judgment entered against it would terminate Handit2's business.

Hyland's is the sales and marketing arm, and a wholly-owned subsidiary, of an 111 year-old business, SHC.  Hyland's markets and sells SHC's homeopathic products on a nationwide basis.  Like Handit2, SHC and Hyland's presently have a compromised financial position.  Class action litigation has been undertaken against the whole homeopathic industry, and is pending against these defendants in California and threatening to seriously harm their business.  A collection of class actions alleges, in part, that defendants misrepresent their homeopathic products with false advertising.  On April 9, 2014, in <u>Forcellati v. Hyland's, Inc.</u>, 2:12-cv-1983-GHK-MRW (C.D. Cal.), the Court certified a Rule 23(b)(3) class for monetary relief.  Litigation expenses in these cases are significant as SHC and Hyland's are in a serious fight for the longevity of their business.

Further affecting SHC and Hyland's current financial conditions, in 2010, in cooperation with the FDA, and in an abundance of caution, SHC issued a voluntary major product recall of its most popular product, Hyland's teething tablets.  The recall and associated expenses cost the companies millions of dollars.  The teething tablets were reintroduced to market with a new formula in July of 2011.  However, the combined lost sales from this top-selling product being

off the market for 9 months and the costs of the recall itself seriously undermined the companies'

financial condition and SHC and Hyland's are now in a severely leveraged financial position.

In consideration of these factors, further litigation would be risky to both plaintiff and

Defendants due to each of the Defendants' presently compromised financial condition.

Due to these factors, Defendants have agreed to pay into the Escrow Account up to

$30,000 for costs of notice and administration, plus 40% of the remainder of the Settlement

Fund, by no later than ten business days after entry of a Preliminary Approval Order. The

balance of the Settlement Fund shall be paid into the Escrow Account by no later than ten

business days after entry of the Final Approval Order.

6.  <u>Settlement Recovery</u>. Defendants shall collectively fund the creation of a

$1,400,000.00 Settlement Fund (hereinafter "the Settlement Fund") to be deposited into an

Escrow Account established and administered by either Settlement Class Counsel or the Class

Administrator, which will be Class-Settlement.com.   The Settlement Fund will be distributed as

follows:

a.  Reasonable costs of notice and administration will be paid from the

Settlement Fund. The parties expect this amount to be approximately $30,000.

b.  Plaintiff's counsel's attorney's fees must be approved by the Court.

Plaintiff's counsel shall submit a request for attorney's fees in an amount not to exceed $462,000

or 33% of the Settlement Fund, plus any additional reasonable costs expended for notice and

administration.

c.  Plaintiff's incentive award must be approved by the Court.

Plaintiff Affiliated Health Care Associates, P.C. shall receive an award of $10,000 as an

incentive award for its services as a Class Representative.   This amount shall be in addition to

any amount plaintiff may recover as a Settlement Class Member.

        d.     If the deductions described in subparagraphs (a)-(c) are approved by the Court, the Net Settlement Fund ($898,000) will be divided pro rata among Settlement Class Members who timely submit a valid Claim Form per each fax transmission received, up to a maximum of $500 per facsimile transmission except that claims of Settlement Class Members based on facsimile numbers with California area codes may receive a maximum of $750 per facsimile transmission.  Handit2 has identified approximately 21,000 faxes which were sent to approximately 6,900 unique fax number with California area codes.

        e.     All settlement checks shall be void 60 days from the date of issuance and shall so state on the check. Any unclaimed or undistributed amounts remaining in the Settlement Fund after all payments required under the Settlement Agreement have been made shall be distributed to a *cy pres* recipient, selected by the parties and approved by the Court.

        7.     <u>Class Notice</u>.   The Settlement Agreement provides for notice by facsimile, supplemented by mail notice to non-responders.  Plaintiff's counsel is aware of at least one instance in which this Court has previously not permitted a plaintiff to send notice by facsimile in a TCPA class action.  *See* <u>G.M. Sign, Inc. v. Franklin Bank, SSB</u>, 06 C 949, 2008 WL 3889950 (N.D. Ill. Aug. 20, 2008).  However, since this Court's ruling in <u>GM Sign,</u> other courts both within and outside this District have approved the sending of notice by facsimile in TCPA class action settlements.  *See e.g.*, <u>C.E. Design, Ltd. v. King Supply Co., LLC</u>, 09 C 2057, 2012 WL 2976909 (N.D. Ill. July 20, 2012); <u>Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.</u>, 12 C 780 (N.D. Ill.)(*Dkt. No. 73*)(fax and publication notice); <u>Able Home Health, LLC and Dr. G. Neil Garrett DDS, PC v. Globe Medical-Surgical Supply Co.</u>, 12 C 5608 (N.D. Ill.) (*Dkt No.*

*90*)(fax notice); <u>Dr. William P. Gress v. Northwood, Inc.</u>, 12 C 7278 (N.D. Ill.)(*Dkt. No. 38*)(fax and mail notice); <u>Able Home Health, LLC v. Healthy Advice Communications, Inc.</u>, 12 C 3019 (N.D. Ill.)(*Dkt. No. 60*)(fax and mail notice); <u>Richard Wade Architects, P.C. v. Engineering Services and Products Company</u>, 11 C 9251 (N.D. Ill.)(*Dkt. No. 58*)(fax notice); <u>City Select Auto Sales, Inc. v. David Randall Associates, Inc.</u>, 11-2658 (JBS/KMW), 2014 WL 413533 (D.N.J. Feb. 3, 2014). <u>Vandervort v. Balboa Capital Corp.</u>, **SACV** 11–1578–**JLS (JPRx)**, 2014 WL 1274049 (C.D. Cal. March 27, 2014); <u>A & L Industries, Inc. v. P. Cipollini, Inc.</u>, 12-07598, 2014 WL 906180, at *1 (D.N.J. March 7, 2014)(rejecting arguments that notice had to be served in accordance with Rule 5(b); "Rule 23(c) should supersede because Rule 23(c) addresses class notice specifically, whereas Rule 5 addresses service generally..."). <u>See</u> <u>MacLean-Fogg Co. v. Ningbo Fastlink Equipment Co., Ltd.</u>, 08 C 2593, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008) (Court allowed service of summons and complaint to Chinese defendants by email and fax); Fed. R. Civ. P. 4 Commentary provides that a waiver of service may be sent by fax. The expense of sending notice solely by U.S. Mail would significantly deplete the Settlement Fund. (see <u>Appendix B</u> - quotes for notice by U.S. Mail). In addition, the Notice program proposed in the parties' Settlement Agreement provides that members of the Settlement Class are sent a complete notice. By contrast, if the Court were to order a mailed Notice program using postcards, the result would be that members of the Settlement Class would only receive an abbreviated form of notice.

   The Settlement Agreement provides that within 5 days after entry of the Preliminary Approval Order, Handit2's counsel shall provide the Fax List to Settlement Class Counsel and/or the Class Administrator. Within 35 days after entry of the Preliminary Approval Order, the Class Administrator shall cause actual Notice (<u>Exhibit 1</u> to the Settlement Agreement)

and a Claim Form (Exhibit 2 to the Settlement Agreement) to be sent to the facsimile numbers identified on the Fax List. Settlement Class Members shall have at least 60 days after the first date on which actual Notice is sent to submit a Claim Form, request exclusion from the Settlement Agreement, or object to the Settlement Agreement.

Within 21 days after the date that the Notice is first sent by facsimile, the Class Administrator may, upon the approval of all Parties, send the Notice and Claim Form either by facsimile and/or U.S. Mail (if addresses are ascertainable) to each Settlement Class Member identified on the Fax List who did not submit a Claim Form or otherwise respond to the Class Notice by that date. In the event notice is sent by fax, the Class Administrator shall make at least two attempts to transmit the Notice by facsimile to those numbers where the initial transmission failed. In the event that notice is sent by U.S. Mail to the addresses provided by Handit2, the addresses shall be run through a NCOA database prior to being mailed.

Settlement Class Counsel will also post the Notice, but not the Claim Form, and the Settlement Agreement (excluding exhibits) on their firm's website.

The Class Administrator may create a website which allows for electronic submission of Claim Forms. Any website created by the Class Administrator may also post the Class Notice, Claim Form, Preliminary Approval Order and Settlement Agreement (excluding exhibits).

8.    Class Members' Right to Opt Out. Any member of the Settlement Class may seek to be excluded from the Settlement Agreement and the releases therein by opting out of the Settlement Class within the time period set by this Court. Any member who opts out of the Settlement Class shall not be bound by any prior Court order or the terms of the Settlement Agreement and shall not be entitled to any of the monetary benefits set forth in the Settlement

Agreement.  Class members will have at least 60 days after the first date on which actual Notice is sent to opt out of the Settlement Agreement.

9.      Claim Form. In order to receive the consideration provided under the Settlement Agreement, each Settlement Class Member must timely return a Claim Form which will be provided with the Notice sent via facsimile and/or U.S. Mail.  The Class Administrator shall provide Settlement Class Members with the option to return a claim form by facsimile, U.S. Mail, or through a dedicated website. After the deadline for the receipt of claim forms expires, the Class Administrator will determine the number of valid Claim Forms received and the number of corresponding transmissions for each claimant.

10.     Class Members' Right to Object.  Any Settlement Class Member may object to the Settlement Agreement by filing with the Court and mailing to Settlement Class Counsel and counsel for Defendants a written objection within the time period set by this Court. Any member who objects to the Settlement Agreement may appear and be heard at the final approval hearing.  Class Members will have at least 60 days after the first date on which actual Notice is sent to object to the Settlement Agreement.

11.     If Settlement Agreement Terminated or Not Approved.  Prior to the Effective Date, as that date is defined in the Settlement Agreement, if (a) the Settlement Agreement is terminated pursuant to its terms; (b) the Settlement Agreement is not approved by this Court or otherwise does not become effective; or (c) any order of this Court finally approving the Settlement Agreement is reversed, vacated, or modified in any material respect which is not mutually acceptable to the Parties, then Plaintiff's counsel or the Class Administrator shall return all funds in the Escrow Account, less costs not exceeding $30,000 actually incurred for notice and administration, to counsel of record for Defendants within three

business days of that event. Until the Effective Date, no payments or distributions may be made

from the Escrow Account other than for class notice and administration expenditures, unless

approved by the Court.

            12.    Federal Rule of Civil Procedure 23(a) makes class certification

appropriate in cases where:

> **(1)  The class is so numerous that joinder of all members is impracticable,**
>
> **(2) There are questions of fact or law common to the class,**
>
> **(3) The claims or defenses of the representative parties are typical of the claims defenses of the class, and**
>
> **(4) The representative parties will fairly and adequately protect the interest of the class.**

Further, Federal Rule of Civil Procedure 23(b)(3) provides that a class action is maintainable if

the above prerequisites have been met and:

> **the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.**

As demonstrated below, each of the requirements for certification of the Settlement Class is met.

            a.    <u>Rule 23(a)(1) -- Numerosity</u>.  Fed. R. Civ. P. 23(a)(1)

requires that the class be "so numerous that joinder of all members is impracticable." The

numerosity requirement is satisfied if it is reasonable to conclude that the number of members of

the proposed class is greater than the minimum number required for class certification, which is

about 10-40.  <u>Kulins v. Malco</u>, 121 Ill. App. 3d 520, 530, 459 N.E.2d 1038 (1st Dist. 1984) (19

and 47 sufficient); <u>Swanson v. American Consumer Industries</u>, 415 F.2d 1326, 1333 (7th Cir.

1969) (40 class members sufficient); <u>Cypress v. Newport News General & Nonsectarian Hosp. Ass'n</u>, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); <u>Riordan v. Smith Barney</u>, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (10-29 sufficient); <u>Sala v. National R. Pass. Corp.</u>, 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); <u>Scholes v. Stone, McGuire & Benjamin</u>, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (72 class members).

In the present case, Handit2 has represented that, based on a review of its records, which it will produce, it successfully sent approximately 190,000 facsimiles to approximately 63,400 unique facsimile numbers which meet the proposed Settlement Class definition. This plainly satisfies the numerosity requirement.

b. <u>Rule 23(a)(2) -- Commonality; and Rule 23(b)(3)- Common Questions of Law or Fact Predominate</u>. Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law <u>or</u> fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation. <u>Blackie v. Barrack</u>, 524 F.2d 891, 910 (9th Cir. 1975). Common questions predominate if classwide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims. <u>McClendon v. Continental Group, Inc.</u>, 113 F.R.D. 39, 43-44 (D.N.J. 1986); <u>Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 114 F.R.D. 48, 52 (S.D.N.Y. 1987); <u>Spicer v. Chicago Board Options Exchange</u>, CCH Fed.Sec.L.Rptr. [1989-90 Transfer Binder] ¶94,943, at p. 95,254 (N.D. Ill. 1990); <u>Alexander Grant & Co. v. McAlister</u>, 116 F.R.D. 583, 590 (S.D. Ohio 1987). Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality

requirement . . . is usually met." Franklin v. City of Chicago, 102 F.R.D. 944, 949 (N.D.Ill. 1984); Patrykus v. Gomilla, 121 F.R.D. 357, 361 (N.D. Ill. 1988).

Here, there are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

(1)    Whether Defendants engaged in a pattern of sending unsolicited facsimile advertisements;

(2)    Whether each Defendant sent, or caused to be sent, the facsimiles at issue;

(3)    Whether Defendants thereby violated the TCPA;

(4)    Whether Defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

(5)    Whether Defendants thereby converted the property of Plaintiff and other Settlement Class Members.

(6)    The manner in which Defendants compiled or obtained their list of facsimile numbers.

The Settlement Class is defined in terms of all persons and entities with fax numbers that, during the Class Period, were sent facsimiles by SHC and/or Hyland's and/or Handit2 promoting products offered by SHC and/or Hyland's or promoting participation in sampling programs for products offered by SHC and/or Hyland's.

Several courts have certified class actions under the TCPA. Holtzman v. Turza, 08 C 2014, 2009 WL 3334909 (N.D. Ill., Oct. 14, 2009), aff'd in relevant part, 728 F.3d 682 (7th Cir. 2013); CE Design Ltd. v. Cy's Crabhouse North, Inc., 07 C 5456, 2009 U.S. Dist. LEXIS 67323 (N.D. Ill. July 27, 2009); Sadowski v. Med1 Online, LLC, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); Hinman v. M & M Rental Ctr., 06 C 1156, 2008 U.S. Dist. LEXIS 27835 (N.D.Ill., April 7, 2008); Targin Sign Sys. v. Preferred Chiropractic Ctr.,

Ltd., 679 F.Supp. 2d 894 (N.D. Ill 2010); Garrett v. Ragle Dental Lab, Inc., 10 C 1315, 2010 WL

4074379 (N.D. Ill. Oct. 12, 2010); Lampkin v. GGH, Inc., 146 P.3d 847 (Okla. Ct. App. Oct. 31,

2006); Display South, Inc. v. Express Computer Supply, Inc., 961 So.2d 451, 455 (La. App. 1st

Cir. 2007); Transportation Institute v. Promo Dart, Inc., No. 06-2-03460-1 (King Co. Sup. Ct.

Wash., Nov. 14, 2006); Kavu, Inc. v. Omnipak Corporation, 246 F.R.D. 642 (W.D. Wash. 2007);

ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., 203 Airz. (App.) 94, 50

P.3d 844 (2002); Critchfield Physical Therapy v. Taranto Group, Inc., 293 Kan. 285, 263 P.3d

767 (2011); Karen S. Little, LLC v. Drury Inns, Inc., 306 S.W.3d 577 (Mo. App. 2010).

        c.    Rule 23(a)(3) – Typicality.  Rule 23 requires that the claims of the named Plaintiff be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.

De La Fuente v. Stokely Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

        In the instant case, typicality is inherent in the class definition. By definition, each of the class members has been subjected to the same practice as the named Plaintiff, namely they are persons and entities with facsimile numbers that, during the Class Period, were sent facsimiles by SHC and/or Hyland's and/or Handit2 promoting products offered by SHC and/or Hyland's or promoting participation in sampling programs for products offered by SHC and/or Hyland's.

        d.    Rule 23(a)(4) -- Adequacy of Representation.  The

adequacy of representation requirement involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992).

Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Counsel's qualifications are set forth in Appendix C. Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

e.     Rule 23(b)(3)  -- Class Action Is Superior to Other Available Methods of Resolving This Controversy.   A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims is small because generally the class members are unaware of their rights and have damages such that it is not feasible for them to bring individual actions.  "[O]ne of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group."  Brady v. LAC, Inc., 72 F.R.D. 22, 28 (S.D.N.Y. 1976).

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> **A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit.  This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .**

In re Folding Carton Antitrust Litigation, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted). Another court has noted:

> **Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller, and Kane have discussed in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see, e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'). The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.**

Lake v. First Nationwide Bank, 156 F.R.D. 615, 625 (E.D. Pa. 1994).

13.    Counsel for Plaintiff and the proposed class believe that the settlement of this action on the terms and conditions set forth in the Settlement Agreement is fair, reasonable, and adequate, and would be in the best interest of the class members.

14.    On September 20, 2013, another class action complaint was filed against Hyland's and Handit2 by Edward Simon, DC, alleging that Hyland's and Handit2 violated the TCPA and the California Business & Professions Code § 17538.43(b) by transmitting unsolicited facsimile advertisements.  That case was removed to the United States District Court for the Central District of California and is now captioned *Edward Simon, DC v. Hyland's, Inc.*, Case No. 2:13-7892 ABC (VBKx) (hereafter, the "California Litigation"), and is currently pending in that Court.  The claims alleged in the California Litigation are based on the same underlying facts as the claims alleged in this case and both complaints attached as exhibits the same facsimile advertisement.  Edward Simon and all of the putative class members in the California Litigation are members of the proposed Settlement Class under the Settlement Agreement.

15.    In order to effectuate the Settlement Agreement, Plaintiff requests that the

Court preliminarily enjoin every member of the Settlement Class from commencing, prosecuting or continuing to pursue on behalf of any class any of the Released Claims, as that term is defined in the Settlement Agreement, against any of the Defendants and each of the Defendants' respective parents, subsidiaries, affiliates, predecessors and successors in interest, and all of those entities'' past and current officers, directors, shareholders, partners, members, employees, agents and insurers in such capacities as they relate to the actions that are the subject of this lawsuit, specifically including, but not limited to, the class claims alleged by the Plaintiff in this lawsuit and/or the class claims alleged in the California Litigation.

WHEREFORE, plaintiffs respectfully request that this Court enter an order in the form of Exhibit 3 to the Agreement, which (i) grants preliminary approval of the proposed settlement, (ii) appoints Affiliated Health Care Associates, P.C. as a Class Representative and Edelman, Combs, Latturner & Goodwin, LLC as class counsel; (iii) directs the faxing of the Notice and a Claim Form in the form of Exhibits 1-2 to the Settlement Agreement, and (iv) enjoins any member of the Settlement Class from commencing, prosecuting or continuing to pursue on behalf of a class any of the Released Claims, and (v) sets dates for submission of Claim Forms, opt-outs, appearances and objections, and schedules a hearing for final approval under Fed. R. Civ. P. 23(c)(2).

Respectfully submitted,

s/  Heather Kolbus
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603
(312) 739-4200

15

(312) 419-0379 (FAX)

**CERTIFICATE OF SERVICE**

       I, Heather Kolbus, certify that on June 26, 2014, I caused a true and accurate copy of the foregoing document to be filed via the Court's CM/ECF system, which will send notification of such filing to the following:

       Mitchell S. Chaban (mchaban@lgattorneys.com)
       Dean J. Tatooles (dtatooles@lgattorneys.com)
       LEVIN GINSBURG
       180 N. LaSalle Street, Suite 3200
       Chicago, IL  60601-2800

       Tami Smason (tsmason@foley.com)
       FOLEY & LARDNER LLP
       555 South Flower Street, Suite 2500
       Los Angeles, CA  90071

       Gordon Davenport III (gdavenport@foley.com)
       FOLEY & LARDNER LLP
       150 E. Gilman Street
       Madison, WI  53703

       Jena L. Levin (jlevin@foley.com)
       FOLEY & LARDNER LLP
       321 N. Clark Street, Suite 2800
       Chicago, IL  60654

       I, Heather Kolbus, further certify that on June 26, 2014, I caused a true and accurate copy of the foregoing document to served via U.S. Mail and email upon the following:

       Scott Z. Zimmermann (szimm@zkcf.com)
       LAW OFFICES OF SCOTT Z. ZIMMERMAN
       601 S. Figueroa Street, Suite 2610
       Los Angeles, CA 90017

       Darryl Cordero (cdc@paynefears.com)
       PAYNE & FEARS, LLP
       801 S. Figueroa St., Suite 1150
       Los Angeles, CA  90017

                                s/ Heather Kolbus
                                 Heather Kolbus

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)